IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Terrance V. Smith, #292962, | ) | C/A No.: 1:15-2996-DCN-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Warden Cecilia Reynolds, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Terrance V. Smith ("Petitioner") is an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). He filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civ. Rule 73.02(B)(2)(c) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [ECF Nos. 19, 20]. Petitioner filed a timely response on February 19, 2016. [ECF No. 26]. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 20] be granted.

I.      Factual and Procedural Background

At trial, the state presented evidence that Petitioner, his codefendant Ivan Collins ("Collins"), and Collins' girlfriend Wykiesha Williams ("Williams") conspired to rob Charles Penny ("Penny") at his home. [ECF No. 19-1 at 451, 454–55]. On August 3, 2001, Williams drove Petitioner and Collins to Penny's house. *Id.* at 458–60. Williams went inside, while Petitioner and Collins remained outside. *Id.* at 460, 463. John Hayward ("Hayward"), Sidney Muller ("Muller"), and Ronnie Rogers ("Rogers") were also present

at Penny's home. *Id.* at 253–55, 299–300. Williams was in the house for 15 to 20 minutes when Collins called her and she reported Penny had marijuana in the house. *Id.* at 463, 465. Williams left the house after the phone call. Immediately thereafter, Collins entered the home armed with guns. *Id.* at 260–61, 373, 465–66. Collins stood in the middle of the front door, told everyone to get down, and started shooting. *Id.* at 261–62. Petitioner then entered the house and started searching the pockets of the occupants of the house. *Id.* at 262. Petitioner first searched Rogers' pocket, and then Muller's pocket. *Id.* at 263. While checking Muller's pocket, Petitioner was jumped by Hayward and they began tussling. *Id.* at 263. Collins shot in the direction of the fight, and Hayward and Muller were both shot. *Id.* at 263–64, 266, 269. Petitioner and Collins ran down the street with Collins shooting Penny's dog before driving away in Williams' car. *Id.* at 470–74. Muller died from his gunshot wounds, and Hayward was permanently injured. [ECF Nos. 19-1 at 378–79; 19-2 at 201–203].

Petitioner was indicted by the Lexington County grand jury during the May 2002 term of court for attempted armed robbery (2002-GS-32-1405), criminal conspiracy (2002-GS-32-1406), and murder (2002-GS-32-1407); and during the February 2003 term of court for burglary first (2003-GS-32-743), possession of a firearm during commission of a violent crime (2003-GS-32-745), assault and battery with intent to kill (ABWIK) (2003-GS-32-746), and ill treatment of animal (2003-GS-32-1109). [ECF Nos. 19-4 at 2––3, 7–8, 13–14, 16–17, 21–22, 25–26; 21]. Petitioner was represented by Jonathan R. Hendrix, Esq. and Michael R. Ellisor, Esq., and proceeded to a jury trial on April 28 to May 2, 2003, before the Honorable Marc H. Westbrook, Circuit Court Judge. [ECF No.

19-1 at 7 *et seq.*]. The jury found Petitioner guilty of attempted armed robbery, criminal conspiracy, murder, burglary first, possession of a firearm, and ABWIK, and acquitted Petitioner of ill treatment of animal.    [ECF No. 19-2 at 374–75]. Judge Westbrook sentenced Petitioner to life without the possibility of parole. *Id.* at 393.

Petitioner appealed his conviction and sentences to the South Carolina Court of Appeals ("Court of Appeals"). [ECF No. 19-5]. On appeal, Petitioner was represented by Mary P. Miles, Esq. [ECF No. 19-6]. Attorney Miles filed a final brief on or about May 31, 2005, raising the following issues:

1.    The trial court erred in not severing the trial and trying the two defendants separately.

2.    The trial court erred in failing to suppress the in-court identification and out-of-court identification of defendant Terrance V. Smith by witness John Heyward.

3.    The trial court erred in not granting a mistrial or, in the alternative, suppressing witness Heyward's testimony on account of his changed testimony on the second day of the trial.

4.    The trial court erred in not granting a mistrial on account of witness Heyward's display of writhing and the like in an apparent attempt to gain the jury's sympathy.

5.    The trial court erred in not granting a mistrial on account of witness Heyward's garbled testimony.

6.    The trial court erred in failing to instruct the jury on self-defense in light of the facts that co-defendant Collins had testified that (A) Mr. Smith had been physically attacked; and that (B) He himself had been fired upon without provocation.

7.    The trial court erred in refusing to grant Mr. Smith's motions for a directed verdict and for a new trial.

*Id.* at 7–30. On November 30, 2005, the Court of Appeals filed an unpublished decision affirming Petitioner's conviction. [ECF No. 19-3 at 8–9]. The remittitur was issued on December 16, 2005. *Id.* at 10.

Petitioner filed an application for post-conviction relief ("PCR") on October 31, 2006, in which he alleged the following claims: ineffective assistance of counsel, prosecutorial misconduct, unconstitutional sentence, and due process violation. *Id.* at 11–20. On January 30, 2013, Petitioner filed an amended PCR application raising a trial court error claim and additional claims of ineffective assistance of counsel. *Id.* at 71–72. A PCR evidentiary hearing was held before the Honorable Frank W. Addy, Jr., Circuit Court Judge, on April 15–16, 2013, at which Petitioner and his counsel, Tara D. Shurling, Esq., appeared. *Id.* at 74–349. On April 2, 2014, Judge Addy filed an order of dismissal. *Id.* at 411–425. Petitioner filed a motion to alter or amend on April 24, 2014. *Id.* at 427–434. On May 12, 2014, Judge Addy filed an order modifying the court's April 2, 2014, order of dismissal. *Id.* at 435–36.

On or about June 10, 2014, Petitioner filed a timely notice of appeal from the denial of PCR. [ECF No. 19-7]. Jeremy A. Thompson, Esq., represented Petitioner on appeal and on or about November 5, 2014, filed a petition for writ of certiorari in the South Carolina Supreme Court raising the following issues:

1.     Whether there is any probative evidence to support the PCR court's conclusion that defense counsel was not ineffective for failing to cross-examine a cooperating co-defendant regarding the potential minimum and maximum sentences that she faced for the charges that she pleaded guilty to and for the charges that were to be dismissed?

> 2.    Whether there is any probative evidence to support the PCR court's conclusion that the Petitioner failed to show that the State committed a due process violation in not disclosing the true nature of the plea agreement it had made with the cooperating co-defendant?
>
> 3.    Whether there is any probative evidence to support the PCR court's conclusion that defense counsel was not ineffective for failing to request a charge on self-defense?

[ECF No. 19-8 at 3]. On June 17, 2015, the South Carolina Supreme Court denied the petition for writ of certiorari. [ECF No. 19-11]. The remittitur was issued on July 6, 2015. [ECF No. 19-12].

Petitioner filed this federal petition for a writ of habeas corpus on July 28, 2015. [ECF No. 1-3 at 2].[1]

## II.    Discussion

### A.    Federal Habeas Issues

Petitioner states the following grounds in his habeas petition:

**Ground One:**    Petitioner's 6th and 14th rights of the United States Constitution were violated because of ineffective assistance of counsel.

Supporting Facts: Please see Attachment Pages 1–3

**Ground Two:**    Petitioner's 5th and 14th rights of the United States Constitution were violated because of due process Brady violation.

Supporting Facts: Please see Attachment Pages 4–5

**Ground Three:**    Petitioner's 6th and 14th amendment of the United States Constitution were violated due to ineffective assistance counsel.

---

[1] The petition was received and docketed by the court on July 30, 2015. [ECF No. 1-3 at 1]. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack*, 487 U.S. 266 (1988). The envelope for the petition reflects it was deposited in the SCDC mailing system on July 28, 2015. [ECF No. 1-3 at 2].

<u>Supporting Facts</u>: Please See Attachment Pages 6–7

[ECF No. 1 at 5–8].

B.    Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the AEDPA, review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Noland v. French*, 134 F.3d 208, 213 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the

federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a.    Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court  shall not be granted unless it appears that- -

(A)    the applicant has exhausted the remedies available in the courts of the State; or

(B)    (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[2] Furthermore, strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

The United States Supreme Court has held that "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete

---

[2] In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007, decision in *Marlar*, South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

round of the State's established appellate review process"—which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000)(internal citations omitted). That is to say, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

The South Carolina Supreme Court has held that the presentation of claims to the state court of appeals without more is sufficient to exhaust state remedies for federal habeas corpus review. *State v. McKennedy*, 559 S.E.2d 850 (S.C. 2002); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990). The *McKennedy* court held that *In re Exhaustion* had placed discretionary review by the South Carolina Supreme Court "outside of South Carolina's ordinary appellate review procedure pursuant to *O'Sullivan*." 559 S.E.2d at 854. As such, it is an "extraordinary" remedy under *O'Sullivan*, "technically available to the litigant but not required to be exhausted." *Adams v. Holland*, 330 F.3d 398, 403 (6th Cir. 2003).

Because the South Carolina Supreme Court has held that presentation of certain claims to the Court of Appeals without more is sufficient to exhaust state remedies, a claim is not procedurally barred from review in this court for failure to pursue review in the South Carolina Supreme Court after an adverse decision in the Court of Appeals.

b.    Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

### 3.    Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the state's courts in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), or by "prov[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branke*r, 517 F.3d 700, 714 (4th Cir.), cert. denied, 555 U.S. 868 (2008). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

### 4.    Ineffective Assistance of Counsel Claims

To prevail on his ineffective assistance of counsel claims, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by

the Sixth Amendment." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 562 U.S. at 104; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting Strickland's high bar is never an easy task[,]' . . . [e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 88 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 562 U.S. at 105. In such circumstances, the "question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied Strickland's deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id.* at 102, quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

D.     Analysis

1.     Merits Review

a)     Ground One

In Ground One, Petitioner alleges his counsel was ineffective when he failed to cross-examine Williams about the potential minimum and maximum sentences she faced for her dismissed charges and the charges to which she pled guilty. [ECF No. 1 at 16].

At the PCR hearing. Petitioner testified:

. . . I really feel like I was unfairly prejudiced and I didn't have a fair trial because I wasn't able to question [Williams] about having a suspended sentence for burglary first.

For me, that is very important, because, you know, being able to confront -- being that I didn't take the stand and my lawyer, he basically -- he said his strategy was -- you know, I wasn't there when in his closing arguments he put me on the scene.

He was like, you know, "Mr. Smith was there, but it didn't happen like this." And the only thing he attacked was credibility. So credibility was my only defense during the whole jury trial.

[ECF No. 19-3 at 254].

When questioned regarding his cross-examination of Williams, trial counsel testified:

Q.     Okay. Did you consider questioning Wakeisha Williams concerning what her understanding was of the minimum penalty she could receive for first -degree burglary?

A.     I can't recall considering that.

Q.     Did you have any strategic or tactical reason for not asking her what her understanding was of the minimum penalty she could receive?

A.     I can't recall having any strategy as to that.

*Id.* at 90–91.  Trial counsel was also questioned about his cross-examination of Williams

on her pending murder charge, and he stated:

> Q.  Okay. Did you consider cross-examining Wakeisha Williams about the benefit she had already received by having the murder charge dismissed?
>
> A.  I don't remember doing that. And in just thinking about it now, it would seem to me that it's pretty obvious that that's a pretty significant benefit.
>
> Q.  And if the record does not reflect that she was questioned at all concerning either the minimum or maximum penalties for murder, would your failure to cross-examine her on the penalties have been inadvertent, or was it some strategic or tactical decision?
>
> A.  I don't have idea. I can't remember that there was any strategy to that. I will say that I think it was kind of obvious that she was getting some kind of consideration for her cooperation and testimony.

*Id.* at 93.  Trial counsel also testified:

> Q.  And my question is absent cross-examination tailored to demonstrate it, how was this jury supposed to know just what her expectations were in terms of just how low a sentence she might could get following her cooperation?
>
> A.  I understand where you're coming from, and I'd have to say I don't know except that if cross-examination had been done, perhaps they would have had a better idea of that.

*Id.* at 129.

The PCR court found this allegation to be without merit, as follows:

Further, this Court finds that trial counsel conducted a vigorous cross-examination of Williams. <u>See</u> Tr. pp. 534–535 (cross-examination on plea agreement). Counsel's cross-examination of Williams was thorough, and counsel properly attacked her credibility in several respects. Counsel clearly did his research on Williams. Counsel cross-examined Williams on her prior forgery conviction and her purportedly fraudulent marriage to a

Chinese drug dealer. Allegedly, she was paid for this marriage of convenience, the purpose of which being so that he could remain in the country. Tr. p. 534, pp. 538–539.

Williams was examined on the fact that, in return for Williams' testimony, the murder charge was being dismissed. Counsel forcefully argued Williams' motive to implicate Applicant and her credibility to the court and jury. Tr. p. 833, line 10 – p. 835, line 3.

Clearly, trial counsel's cross-examination and impeachment of Williams did not fall below that expected of a reasonable attorney. This Court finds that Applicant has not met his burden of showing trial counsel was ineffective, as counsel's performance did not fall below professional norms.

Further, in light of the vigorous cross-examination and the evidence presented at trial, this Court finds that Applicant was not prejudiced by the alleged deficiency. Even if cross-examination was insufficient in some respects, Applicant failed to demonstrate prejudice, and this Court finds that the result of the trial would most likely remain the same.

*Id.* at 415–16.

In his response, Petitioner argues his trial counsel was deficient when he failed to vigorously cross-examine Williams so that the jury heard William's expectation that her cooperation could result in a sentence that involved no incarceration. [ECF No. 26 at 13–14]. Petitioner alleges he was prejudiced by counsel's deficient behavior because Williams was the state's key witness and if she had not testified the state "would have been left with the testimony of several intoxicated witnesses who were also under the influence of narcotics at the time of the crime to establish the presence of Collins and the Petitioner at the crime scene." *Id.* at 14. Petitioner argues if the jury would have heard that Williams hoped to receive a sentence of no imprisonment, it is highly likely that the jury would have discounted Williams' testimony entirely. *Id.*

Petitioner cannot satisfy the *Strickland* test. The court cannot find that there was a substantial likelihood that the result of Petitioner's trial would have been different had trial counsel specifically questioned Williams regarding the maximum and minimum sentences she faced as a result of her plea agreement with the state. In light of the evidence of Petitioner's guilt, including the testimony of the victims [ECF No. 19-1 at 302–304, 316–18, 373–77, 379–83], eye-witnesses [*id.* at 260–65], and Collins [ECF No. 19-2 at 244–49, 265–66], the PCR court reasonably found that counsel's failure to cross-examine Williams about her potential sentences did not affect the outcome of the trial. Petitioner has failed to overcome the doubly deferential standard of review accorded the state court's determination of this issue of ineffective assistance of counsel under *Harrington*. Petitioner has also failed to show that the state court's analysis of this issue misapplied clearly established federal law or, even if there were an error, that it was unreasonable. *See Williams*, 529 U.S. at 410. Based on the foregoing, Petitioner is not entitled to federal habeas relief on this ground, and it is recommended that Ground One be dismissed.

b)     Ground Two

In Ground Two, Petitioner alleges he was denied his right to a fair trial when the state failed to disclose the true nature of Williams' plea agreement. [ECF No. 1 at 19].[3] Petitioner claims Williams falsely testified that her murder charge was dismissed

---

[3] Respondent argues Petitioner procedurally defaulted on his claim in Ground Two. [ECF No. 19 at 34–37]. Liberally-construed, this issue was addressed in the PCR court's order and Petitioners' PCR appeal, and is therefore preserved for federal habeas review. Accordingly the undersigned conducts a merits review of this claim.

"because of her plea to the other charges" when Williams' murder charge was not dismissed until the Monday following Petitioner's trial. *Id.* Petitioner argues "the states failure to disclose, or correct Williams on the true agreement is a clear due process violation." *Id.* at 20.

During the PCR hearing, the solicitor testified about Williams' plea agreement and stated:

> To the best of my memory, she was going to plead to burglary first, and an attempted armed robbery, and I believe a conspiracy charge. And the other charges were going to be dismissed provided that she give truthful testimony during the trial of the co-defendants, Collins and Smith.

[ECF No. 19-3 at 278]. The solicitor further testified:

> Q.    Would you agree that the way the question was posited to this witness would give the jury the impression that the murder indictment was - - the murder charge was gone, that it was a done deal?
>
> A.    Yes, I guess it would have. I don't know. I mean, the agreement was that the charges were going to be dismissed.
>
> Q.    I understand that. But it doesn't say that in the transcript. And the transcript says, "And those charges -- to ask about you were originally charged with murder?" "Yes, sir." "And there were some other attempted armed robbery charges?"
>
> "Yes, sir." "And those charges have been dismissed?" "Yes, sir." So my question is, by saying they have been dismissed, would that not lead the jury to believe that those charges were gone, that they had been dismissed?
>
> A.    I guess the question was not artfully asked, yes, ma'am.

*Id.* at 298.

The PCR court denied this claim, finding Petitioner "failed to show any basis to

believe that there were negotiations between Williams and the prosecution other than what was presented at trial." *Id.* at 416.

In his response, Petitioner alleges that at the time of Petitioner's trial, Williams' murder charge had not been dismissed. [ECF No. 26 at 25]. Petitioner argues this was "essentially the opposite of what the jury was informed about the status of the charge through the prosecutor's questioning of Williams." *Id.* Petitioner claims the strength of the state's case relied, in large part, on Williams' testimony and alleges there is a reasonable probability that the jury would have acquitted Petitioner had they known that the prosecutor could resume his prosecution of Williams for murder if she did not testify favorably for the state at trial. *Id.* at 26. Petitioner alleges the evidence of Petitioner's guilt was not overwhelming and claims the testimony of the state's other witnesses "was highly suspect, given their levels of intoxication and the influence of narcotics the night of the incident." *Id.*

The undersigned finds Petitioner has not shown by clear and convincing evidence that the PCR court reached an unreasonable factual determination on this issue. *See Evans v. Smith*, 220 F.3d 306, 312 (4th Cir. 2000) (holding that federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding); 28 U.S.C. § 2254(e)(1) (finding the determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence). Further, given the evidence of Petitioner's guilt introduced at his trial as outlined in the Factual Background section above,

1:15-cv-02996-DCN    Date Filed 04/18/16    Entry Number 27    Page 20 of 24

including Hayward and Penny's identification of Petitioner as one of the gunmen [ECF No. 19-1 at 316–18, 379–83], and Collins' testimony that placed Petitioner at Penny's house at the time of shooting [ECF No. 19-2 at 244–49, 265–66], the undersigned finds Petitioner has failed to show he was prejudiced by the state's direct examination of Williams regarding when her pending charges were dismissed. The undersigned recommends Ground Two be dismissed.

c)    Ground Three

In Ground Three, Petitioner alleges he was denied effective assistance of counsel when his trial counsel failed to request a self-defense jury charge after Collins testified. [ECF No. 1 at 21].

At the PCR hearing, trial counsel was asked whether he considered requesting a self-defense jury charge. [ECF No. 19-3 at 175]. He stated:

> I don't have any recollection about considering that one way or the other. And to be honest with you, I don't have any idea why not, because once Mr. Collins had testified - - I'm thinking about it in terms of with the jury - - it would have been more or less a freebie to ask the judge to charge that.

*Id.* When asked if he would agree that a self-defense charge would have been appropriate, counsel testified:

> Well, in my opinion, it should have been. But that's coming from the side of somebody who's always representing defendants. I'm not sure if Mr. Riddle would have thought that that was an appropriate charge or not.

> But in my opinion, it certainly would have been -- I think is one you could have asked for and perhaps should have expected or hoped that the judge was going to give based on Mr. Collins' testimony, because without that testimony - - that's one thing about it -- without that testimony, there was no indication that self-defense could be raised, as I understood it, because of the necessity that you not bring on the conflict, which everybody else's

testimony was the two guys that came to the door brought on the conflict, except Mr. Collins. His testimony was different.

*Id.* at 177–78.

The PCR court denied this allegation, finding:

In Ground 12, Applicant alleges counsel was ineffective for failing to request a jury charge on self-defense or defense of others based on Co-Defendant Collins' testimony at trial. Collins' testimony was as follows: Collins testified that they did not go to the apartments to commit a robbery. Instead, Williams asked to go there and went inside the apartment while Collins and Applicant waited in the car. After about twenty minutes, Applicant went to check on Williams, knocked on the door, and ended up in a struggle with another man. Meanwhile, Collins approached and saw a man in the doorway with a gun who fired at him. He fired back and struck the man.

Counsel testified that he was focused on a defense that Applicant was not there and was misidentified. However, Collins, who testified against his attorney's advice, certainly undermined this defense. Collins' testimony would support self-defense and perhaps defense of others, but that was Collins' defense, not Applicant's. Applicant's defense under those facts would be mere presence. This Court notes that the trial court gave an instruction on mere presence. Accordingly, Applicant was not prejudiced by the failure to instruct the jury on self-defense or defense of others and counsel's performance was not deficient. This allegation is denied.

*Id.* at 423.

In his response, Petitioner argues he was prejudiced by his counsel's failure to request a self-defense charge because the jury was not informed that the law may have excused Collins' actions in shooting the victims. [ECF No. 26 at 30]. Petitioner claims "[a]ll the jury needed to do to convict Collins and the Petitioner is to conclude Collins acted with malice because he used a firearm. Mere presence would not have defeated that interpretation of the evidence, but self-defense certainly would have." *Id.* at 30–31.

Petitioner alleges the evidence against Petitioner was not overwhelming and argues "there is a reasonable likelihood that the jury would have acquitted the Petitioner and Collins had they known that the law excused Collins' actions if the State could not disprove his defense beyond a reasonable doubt." *Id.* at 31.

Petitioner cannot satisfy the *Strickland* test. During the trial, Collins testified he and Petitioner rode with Williams to Penny's house. [ECF No. 19-2 at 244–46]. Collins stated Williams went into Penny's house and 15 minutes later he and Petitioner got tired of waiting on Williams so Petitioner knocked on Penny's door. *Id.* at 246–48. Collins claimed the door opened, Williams ran out, and then an unknown individual slammed Petitioner on the ground and "pulled a gun." *Id.* at 248–49. Collins testified he fired his gun in Petitioner's direction, and when the individual shot back, he ran away. *Id.* at 249. In light of this evidence presented in the state court proceeding, Petitioner has failed to establish that the PCR court's finding was unreasonable that the defense available to Petitioner under Collins' testimony was mere presence, and not self-defense. *See Williams v. Taylor*, 529 U.S. at 399. Petitioner has also not shown that the PCR court's decision was contrary to or involved an unreasonable application of clearly-established federal law, as determined by the Supreme Court of the United States. Because Petitioner has failed to demonstrate that his counsel's performance was deficient, the undersigned recommends that Ground Three be dismissed.

IV.    Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [ECF No. 20] be granted and the petition be dismissed with prejudice.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 18, 2016                                      Shiva V. Hodges
Columbia, South Carolina                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).